IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

MEGAN BRATTON,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        Case No. 3:22-cv-644-SMD
                                        )
MARTIN J. O'MALLEY,                     )
Commissioner of Social Security,[1]     )
                                        )
        Defendant.                      )

## OPINION & ORDER

Plaintiff Megan Bratton ("Bratton") applied for a period of disability and disability insurance benefits ("DIB") on November 27, 2019, alleging disability beginning September 10, 2019. Tr. 60, 298-99. Bratton's application was denied at the initial administrative level, after which she received a hearing and a supplemental hearing before an Administrative Law Judge ("ALJ"). Tr. 80-117, 146-87. On December 29, 2021, the ALJ found that Bratton was not disabled. Tr. 57-73. Bratton appealed to the Social Security Appeals Council ("Appeals Council"), which denied review. Tr. 18-24. Therefore, the ALJ's order became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Bratton appeals that decision under 42 U.S.C. § 405(g). For the reasons that follow, the

---

[1] On December 18, 2023, the United States Senate confirmed Martin O'Malley as Commissioner of the Social Security Administration. Thus, the Court substitutes O'Malley for his predecessor, Kilolo Kijakazi. *See* FED. R. CIV. P. 25(d)(1).

undersigned AFFIRMS the Commissioner's decision.[2]

# I.     STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th

---

[2] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 13); Def.'s Consent (Doc. 14).

[3] *McDaniel* is an SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Cir. 2004). A claimant's RFC is what the claimant can still do—despite her impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy she can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[4] or (2) the testimony of a vocational expert ("VE").[5] *Id.* at 1239-40.

## II.    STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the ALJ applied the correct legal standards. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence, or the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close

---

[4] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[5] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

For purposes of judicial review, "[s]ubstantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F.2d at 1145.

## III.   ADMINISTRATIVE PROCEEDINGS

Bratton was 35 years old at the time the ALJ issued his decision. Tr. 73, 298. She has a high school education with no past relevant work experience. Tr. 73, 298, 325, 337. She alleged disability due to relapsing remitting MS, mild cognitive impairment, generalized pain, severe fatigue, shortness of breath, pituitary adenoma, clinically isolated syndrome, essential tumor, and peripheral neuropathy. Tr. 336.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Bratton's disability determination. At step one, the ALJ found Bratton has not engaged in substantial gainful activity since her alleged onset date. Tr. 62. At step two, the ALJ found Bratton suffers from the following severe impairments: alleged multiple sclerosis (possibly mis-diagnosed in late-2019, ruled out in 2021); alleged complex partial seizures (diagnosed in 2019, but with little evidence of on-going treatment in 2020 or 2021); Borderline Personality Disorder, depression, anxiety,

4

and possible functional overlay. Tr. 63-64. At step three, the ALJ found Bratton does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 64.

The ALJ then determined Bratton's RFC, finding she has the capacity to perform a reduced range of light exertional work. Tr. 64-72. At step four, the ALJ found that "[t]he evidence does not clearly show whether [Bratton's] work activity during the last 15 years constitutes past relevant work"; therefore, the ALJ made no finding and continued to step five. Tr. 72. At step five, the ALJ found Bratton can adjust to other work and that she "has not been under a disability . . . at any time since her alleged onset date." Tr. 72-73.

## IV.   BRATTON'S ARGUMENTS

Bratton presents five issues for the Court's review:

(1) Whether the Commissioner erred by failing to evaluate the persuasiveness of the medical opinions of Lee Wallace, Ph.D. and Leigh McCary, M.D.;

(2) Whether the Commissioner erred by failing to properly evaluate the supportability and consistency of the medical opinion of Laurence Ligon, M.D.;

(3) Whether the Commissioner erred by failing to properly evaluate the supportability and consistency of the medical opinion of Joel Forgus, Ph.D.;

(4) Whether the ALJ's RFC assessment regarding her ability to interact is supported by substantial evidence; and

(5) Whether the ALJ's evaluation of Bratton's subjective symptoms is supported by substantial evidence.

Pl.'s Br. (Doc. 8) p. 8. As explained below, the undersigned finds that the ALJ did not commit reversible error as to any of these issues.

## V.   ANALYSIS

### A. Whether the Commissioner erred by failing to evaluate the persuasiveness of the medical opinions of Lee Wallace, Ph.D., and Leigh McCary, M.D.

A medical opinion is a statement from a medical source about what a claimant can still do despite her impairments. 20 C.F.R. § 404.1513(a)(2). When a medical source provides a medical opinion, an ALJ must determine the persuasiveness of the opinion by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c).[6] Supportability and consistency are the "most important" factors considered by the ALJ. 20 C.F.R. § 404.1520c(a); *Simon v. Kijakazi*, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021). As such, the ALJ must articulate how these factors were considered in evaluating a medical source's opinion. *See* 20 C.F.R. § 404.1520c(a)-(c); *see also Works v. Saul*, 2021 WL 690126, at *15 (N.D. Ala. Feb. 23, 2021) (While an ALJ need not articulate how he applied each factor to the medical source opinion, the ALJ must state more than broad conclusions, at least with respect to supportability and consistency.). The ALJ may—but is not required to—explain how he considered the other remaining factors. *Nix v. Saul*, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021) (citing 20 C.F.R. § 404.1520c(b)(2)).

---

[6] Twenty C.F.R. § 404.1520c outlines how the Commissioner examines medical opinions and prior administrative findings for claims filed on or after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Bratton filed her claim on June 17, 2019, so these revised regulations apply. *See* 20 C.F.R. § 404.1520c.

Here, Bratton argues that the ALJ failed to articulate the persuasiveness of the prior administrative medical findings of Dr. Lee Wallace or Dr. Leigh McCrary. Pl.'s Br. (Doc. 8) p. 12. The Commissioner appears to concede that the ALJ "may have erred" by failing to explicitly articulate the persuasiveness of the opinions but contends that any such error was harmless because the findings of Dr. Wallace and Dr. McCrary "are not inconsistent with the ALJ's RFC finding." Resp. (Doc. 11) p. 6. Bratton does not reply to the Commissioner's argument that the error, if any, is harmless. *See* Reply (Doc. 12).

The ALJ limited Bratton to "light exertional work" with the following restrictions: she can (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk up to 2 hours and sit up to 6 hours in an 8-hour workday; (3) occasionally climb, balance, stoop, kneel, crouch, or crawl; (4) never work around hazards, such as machinery or heights; (5) occasionally understand, carry out, and remember only detailed (non-complex) instructions; (6) use judgment to make only detailed (non-complex) work-related decisions; and (7) frequently interact with people in a routine work setting. Tr. 64. Consistent with the physical portion of the RFC assessment, Dr. McCrary opined that Bratton (1) could occasionally lift and/or carry 20 pounds and 10 pounds frequently, Tr. 194; (2) could stand and/or walk for a total of 4 hours and sit for 6 hours in an 8-hour workday, Tr. 194; (3) could occasionally climb, balance, stoop, kneel, crouch, or crawl, Tr. 194; and (4) should "[a]void even moderate exposure" to hazards, Tr. 195. And consistent with the mental portion of the RFC assessment, Dr. Wallace opined that Bratton could "understand, remember, and carry out detailed but not complex instructions"; "make decisions"; "attend and concentrate for extended periods"; "accept instructions"; "respond

7

appropriately to changes in a routine work setting"; and was not limited in her social interactions. Tr. 197. Because these opinions are consistent with the ALJ's RFC, any error by the ALJ in failing to explicitly evaluate their persuasiveness is harmless. *See Shelton v. Kijakazi*, 2022 WL 3334454, at *6 (S.D. Ga. July 22, 2022) (holding that the ALJ did not err by failing to discuss the persuasiveness of a medical opinion that was largely consistent with the RFC determination); *Brioso v. Kijakazi*, 2023 WL 5595912, at *10 (S.D. Fla. Aug. 11, 2023) ("Given that the Challenged Medical Opinions *appear to conflict with the RFC*, the ALJ's failure to adequately address those Opinions renders the ALJ's decision unsupported by substantial evidence.") (emphasis added).

### B. Whether the Commissioner erred by failing to properly evaluate the supportability and consistency of Dr. Laurence Ligon's medical opinion.

The ALJ examined the opinion of Dr. Laurence Ligon—a state agency medical consultant—and found it persuasive as to Bratton's physical limitations. Tr. 71-72. The ALJ reasoned that Dr. Ligon's opinion was "consistent with evidence from other medical sources and non-medical sources" that he summarized previously in his opinion. Tr. 71-72. Bratton argues that this reasoning is insufficient because the ALJ failed to adequately explain how Dr. Ligon's opinion was consistent with the previously summarized medical evidence, thereby making it "impossible to determine what, specifically, the ALJ found consistent amidst the seven pages of the decision summarizing the medical and other evidence." Pl.'s Br. (Doc. 8). p. 12; Pl.'s Reply (Doc. 12) p. 2.[7]

---

[7] Bratton concedes that "the ALJ's explanation regarding supportability may be sufficient," Reply (Doc. 12) p. 2, and the undersigned agrees. Thus, the undersigned limits the analysis to whether the ALJ's explanation regarding consistency is sufficient.

When addressing a medical opinion's consistency, the ALJ must examine "the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021). "Conclusory statements about consistency . . . are insufficient to show that substantial evidence supports the ALJ's decision." *Mercado v. Comm'r of Soc. Sec.*, 2023 WL 145154, at *5 (M.D. Fla. Jan. 10, 2023). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence" that supports the ALJ's finding of consistency. *Marone v. Comm'r of Soc. Sec.*, 2016 WL 1253575, at *7 (M.D. Fla. Mar. 31, 2016). Instead, the ALJ is simply required to "provide sufficient detail concerning the degree to which he finds a medical source's opinion persuasive so that a reviewing court may understand the ALJ's analysis." *Works*, 2021 WL 690126, at *15 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).

Here, the ALJ found Dr. Ligon's opinion as to Bratton's physical limitations persuasive because it was consistent with the other medical and non-medical evidence he had previously discussed in his opinion. Tr. 71-72. Particularly, the ALJ found that, "[b]ased upon extensive neurological work-up in 2021, [Bratton] does not even have MS, although she is convinced that she does. In any case, whether she has it or not, her allegation of extensive MS symptoms is not consistent with the objective medical evidence summarized above. For example, she alleges a disabling gait disturbance and tremor, yet the evidence shows normal gait with no tremor of the outstretched hands [ ]. Motor strength is 5/5 bilaterally in the upper and lower extremities [ ]; finger-to-nose is intact. Additionally, there was no aspiration or penetration from barium swallow [ ]; CSF studies

were unremarkable [ ]; and extensive neurologic work-up was unremarkable [ ]." Tr. 70-71.

Substantial evidence supports the ALJ's consistency finding. Although the ALJ did not specifically identify the other medical and non-medical evidence he found consistent with Dr. Ligon's opinion, the Court is not left to "merely speculate" about his reasoning. Indeed, in assessing Bratton's RFC, the ALJ pointed to specific objective medical evidence that undercut her claims of severe physical limitations. The ALJ was not required to repeat this evidence and analysis when he evaluated the consistency of Dr. Ligon's opinion. *See Cook*, 2021 WL 1565832, at *4 (finding the ALJ's explanation was sufficient despite omitting explicit reference to "supportability" and "consistency," and referring to other medical evidence only generally); *Rice v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses" at multiple points in the decision).

Nonetheless, even if the ALJ failed to adequately address the consistency factor of Dr. Ligon's opinion, "remand is warranted only if the error was harmful." *Miller v. Kijakazi*, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023) (citing *Shineski v. Sanders*, 556 U.S. 396, 407-08 (2009)). An error is harmless if "it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err," *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). It is the plaintiff's burden to show prejudicial or harmful error. *Miller*, 2023 WL 234773, at *3 (quoting *Jones v. Astrue*, 691 F.3d 730, 734-

35 (5th Cir. 2012)). To satisfy this burden, a plaintiff must show that had the ALJ given further explanation, he would have adopted additional limitations. *Id*. at 4.

Here, Bratton does not argue—and the Court does not otherwise find—that any failure to adequately address the consistency factor of Dr. Ligon's opinion is harmful. Bratton does not assert how the administrative outcome would have changed had the ALJ more thoroughly discussed how Dr. Ligon's opinion was consistent with the medical and non-medical evidence he previously detailed. Thus, even if the ALJ failed to adequately address the consistency factor of Dr. Ligon's opinion, Bratton has not shown that such an error is harmful.

### C. Whether the Commissioner erred by failing to properly evaluate the supportability and consistency of Dr. Joel Forgus's medical opinion.

The ALJ examined the opinion of Dr. Joel Forgus—a state agency psychological consultant—and found it not persuasive as to the finding that Bratton can only perform unskilled work. Tr. 71-72. The ALJ reasoned that Dr. Forgus's opinion was "not consistent with serial mental status exams during the relevant period showing normal memory, normal thought process and content, normal attention, normal concentration, and average intelligence." Tr. 72. Further, the ALJ noted that Dr. Forgus "found moderate limitation in [Bratton's] ability to interact [ ], with no corresponding limitation [in his] opinion regarding her mental RFC []." Tr. 72.

Bratton argues that this reasoning is insufficient for three reasons. First, Bratton contends that the ALJ improperly "resorted to conclusory statements in lieu of an appropriately articulated explanation of both supportability and consistency," precluding

meaningful review. Pl.'s Br. (Doc. 8). pp. 15-16. Second, Bratton contends that the ALJ cherry picked evidence showing normal mental findings that were contrary to Dr. Forgus's opinion. *Id*. at 16. Third, Bratton argues that by improperly rejecting the opinion of Dr. Forgus and failing to articulate the persuasiveness of Dr. Wallace's opinion, the ALJ erred by "reject[ing] all medical expert opinions and substitut[ing] his own lay opinion regarding [Bratton's] mental RFC." *Id*. at 16-17.

First, substantial evidence supports the ALJ's assessment as to the consistency and supportability of Dr. Forgus's opinion. In finding Dr. Forgus's mental limitations not persuasive, the ALJ noted that the opinion was not consistent with serial mental exams during the relevant period that showed Bratton had normal memory, thought process and content, attention, and concentration. Tr. 72. The ALJ also noted that Dr. Forgus's opinion lacked support because, although Dr. Forgus found that Bratton had moderate limitation in her ability to interact, he did not limit her accordingly when assessing her mental RFC. Tr. 72. Considering the opinion as a whole, these statements are not conclusory and specifically address both the consistency and supportability of Dr. Forgus's opinion, as the ALJ was required to do.

Second, substantial evidence supports the ALJ's finding that Dr. Forgus's opinion was not persuasive as to Bratton's mental limitations. While an ALJ "may not pick and choose which evidence supports [his] decision while disregarding evidence to the contrary," the ALJ is not required to refer to every piece of evidence in the case so long as the ALJ's decision shows that the ALJ considered the claimant's medical condition as a whole. *Rudd v. Saul*, 2019 WL 4784812, at *8 (M.D. Ala. Sept. 30, 2019) (citing *McCruter*

*v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986)); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curium). Here, throughout his opinion, the ALJ noted evidence in support of and against imposing mental limitations in Bratton's RFC. *See* Tr. 65-72. And while Bratton points to evidence supporting Dr. Forgus's opinion that she was more limited than her RFC, this evidence does not undermine the substantial evidence that supports the ALJ's determination that Dr. Forgus's opinion was not persuasive regarding Bratton's mental limitations. *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion.").

Third, the Court finds that the ALJ did not impermissibly substitute his own lay opinion for that of Dr. Forgus. Although an ALJ may not reach "medical conclusions about the claimant's condition," he can make "legal conclusions about the claimant's ability to work." *Delong v. Berryhill*, 2019 WL 1397926, at *8 (M.D. Fla. Mar. 28, 2019) (citing *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J., concurring)). In making such conclusions, there is no requirement that the ALJ base a claimant's RFC on a physician's opinion. *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) (rejecting a claimant's argument that the ALJ's RFC must be based on a physician's opinion and finding that the ALJ did not substitute his judgment for that of the physician by determining that the opinion was inconsistent with the medical evidence); *see also Drew v. Kijakazi*, 2022 WL 4463585, at *6 (M.D. Fla. Sept. 26, 2022) ("Plaintiff does not cite to any persuasive or binding authority to support his proposition that the ALJ was required to

obtain opinion evidence about Plaintiff's physical limitations as specifically related to the RFC limitations."). In short, the ALJ here simply weighed the evidence and found that Dr. Forgus's opinion was not persuasive as to Bratton's mental limitations to her ability to work. He did not, as Bratton argues, reach medical conclusions about her condition.

For these reasons, the undersigned finds that the ALJ sufficiently explained why he found Dr. Forgus's opinion persuasive and therefore did not err.

### D. Whether the ALJ's RFC assessment regarding her ability to interact is supported by substantial evidence.

Bratton asserts that the ALJ's RFC determination that she could frequently interact with people "is not sufficiently specific, nor sufficiently linked to the evidence of record." Pl.'s Br. (Doc. 8) p. 21. Bratton contends that despite the ALJ and Dr. Forgus determining that she was moderately limited in her ability to interact with others, the ALJ found that she can "only frequently interact with people in a routine work setting." *Id*. at 20. Bratton asserts that the ALJ failed to explain "how moderate limitations equates to frequent . . . interaction with people rather than occasional . . . interaction" and that the ALJ did not "explain what 'people' refers to." *Id*. Thus, Bratton argues that the ALJ's RFC is not supported by substantial evidence. *Id*.

The RFC "is the most [the claimant] can still do despite [her] limitations," and must be based "on all relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). In formulating a claimant's RFC, the ALJ must consider all severe and non-severe impairments, and the ALJ must "provide a sufficient rationale to link substantial record evidence to the legal conclusions reached." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055

(S.D. Ala. 2016) (internal quotations and citations omitted). However, the ALJ is not required to refer to every piece of evidence, so long as his RFC finding is not arbitrary and allows the reviewing court to determine that he considered the claimant's medical condition as a whole. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021) (citing *Dyer*, 395 F.3d at 1211).

Substantial evidence supports the ALJ's finding that Bratton could frequently interact with others. At step two, the ALJ rated Bratton as having moderate limitation in the area of interacting with others. Tr. 63. But this determination, which simply rated the severity of Bratton's mental impairment, is not equivalent to an RFC assessment, which "is a more detailed assessment of the claimant's functionality." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013); *see* 20 C.F.R. §§ 404.1520(a)(4), 404.1520a(b)-(d). Thus, the ALJ was not required to include any particular limitations in Bratton's RFC based simply on his step-two finding that Bratton was moderately impaired in her ability to interact with others. Similarly, the ALJ was not required to include RFC limitations based on Dr. Forgus's assessment of the same. SSA POMS DI § 24510.060(B)(2)(a), (4), 2001 WL 1933367 (last updated Apr. 4, 2021) (clarifying that ratings in the mental RFC assessment, which ask the provider to rate the presence and degree of a claimant's limitations in four functional areas, are "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment") (emphasis omitted).[8]

---

[8] *Crumley v. Comm'r of Soc. Sec.*, 2019 WL 1417320 at *1 (M.D. Fla. Mar. 29, 2019) (noting that agency medical consultants are to describe "the degree and extent" of a claimant's "capacity or limitation" in

In deciding not to limit Bratton's social interactions, the ALJ noted that Bratton "reports that her impairments *do not affect her ability to get along with others*" and "that she spends time with others every day (friends and family over the phone or through the internet)[]." Tr. 63 (emphasis added). The ALJ also acknowledged contrary evidence, including Bratton's "inconsistent[] reports" that "she has a problem getting along with family, friends, and others, as she gets mad over small things[];" that she "does not get along with authority figures; and that she has been fired from a job because of problems getting along with other people[.]" Tr. 63. But despite Bratton's self-reports, the ALJ found Bratton cooperative during her mental status examination and "polite and respectful, with good interpersonal skills" during both hearings. Tr. 63. This is substantial evidence supporting the ALJ's assessment as to Bratton's ability to interact with others and his decision not to include additional limitations in her RFC, despite his finding that she had a moderate limitation in that area of functioning. As such, the ALJ did not err in this determination.

---

narrative format and "it therefore is the narrative written by the medical consultant, rather than the summary conclusions, that the ALJ must use as the assessment of a claimant's RFC"); *Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012) (explaining that checking boxes as "moderately limited" are only part of a worksheet that does not constitute the doctor's actual RFC assessment and only means that the claimant's capacity is impaired—not the degree and extent of the limitation—and that after checking the boxes as an aid, the doctor is then required to detail the actual RFC assessment); *DeJesus v. Comm'r of Soc. Sec.*, 2022 WL 833677 at *6 (M.D. Fla. Mar. 21, 2022) ("'In this Circuit, the ALJ is not required to include the moderately limited notations from the summary conclusions section in a claimant's RFC.'") (citation and internal quotation marks omitted).

**E. Whether the ALJ's evaluation of Bratton's subjective symptoms is supported by substantial evidence.**

Bratton argues that the ALJ erred in evaluating her subjective symptoms because he improperly (1) relied on her ability to recite her medical history; (2) cherry-picked normal mental status findings; (3) relied on her application for unemployment benefits; (4) conducted his own mental status evaluation at the hearing; and (5) relied on her inability to obtain a medical source statement regarding her mental limitations. Pl.'s Br. (Doc. 8) pp. 24-26. Bratton's argument is not persuasive.

A Social Security claimant may prove disability through subjective testimony about their symptoms. *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 766 (11th Cir. 2014). To establish disability through subjective complaints, a claimant must provide: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). A claimant's testimony coupled with evidence meeting this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citations omitted). In evaluating a claimant's subjective symptoms, the ALJ may consider a variety of factors, including: objective medial evidence, treatment history, response to medication and other treatments, sources of pain relief, and the claimant's daily activities. *See* 20 C.F.R. §§ 404.1529(c)(1)-(4). If an ALJ rejects a claimant's testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225.

Here, the ALJ examined Bratton's subjective complaints and found that "although [Bratton] has medically determinable impairments that could reasonably be expected to produce the alleged symptoms, her statements about the intensity and persistence of the symptoms and the extent to which they limit her capacity for work are not consistent with the *objective medical evidence* from the relevant period of medical history (since September 2019) and *other evidence*." Tr. 65 (emphasis in original). The ALJ then summarized both categories of evidence that did not support Bratton's statements. Tr. 65-72. As for the objective medical evidence, the ALJ noted, *inter alia*, Bratton's reports that she was doing well, that her medication was helping, and various examinations that showed normal mental status results, even with continued reports of depression and anxiety. Tr. 65-72. As for other evidence, the ALJ also noted that Bratton had applied for unemployment after she stopped working in 2019, which required her to certify she was able to work, Tr. 71; that her symptoms were not consistent with her demeanor at the hearing, Tr. 71; and that she had not received a medical source opinion that she is disabled, Tr. 71.

Substantial evidence supports the ALJ's treatment of Bratton's subjective symptom testimony. To begin, the ALJ's reliance on Bratton's unemployment application and her demeanor at the hearing were proper. *See* 20 C.F.R. § 404.1529; *Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016) (ALJ properly considered that, in order to qualify for unemployment benefits, claimant had to testify that he was ready, willing, and able to work). Further, while Bratton points to evidence that supports her allegation of disability, this evidence does not undermine the substantial evidence relied on by the ALJ

to find that she was not disabled. The ALJ thoroughly compared Bratton's complaints with her medical records and other evidence and reasonably concluded that her complaints were not consistent with the evidence as a whole.The Court cannot reweigh the evidence, as Bratton invites the Court to do. *See Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1314 (11th Cir. 2021) (even if the court disagrees with the ALJ's conclusion, the court must confirm so long as the decision is supported by substantial evidence). Thus, the Court finds that the ALJ did not err in the treatment of Bratton's subjective symptoms.

## VI.    CONCLUSION

As explained above, the undersigned finds that substantial evidence supports the Commissioner's decision. Accordingly, it is

ORDERED that the Commissioner's decision is AFFIRMED. A separate judgment will issue.

DONE this 23rd day of February, 2024.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE